1  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   Jonathan D. Selbin (State Bar No. 170222)
2  jselbin@lchb.com
   250 Hudson Street, 8th Floor
3  New York, NY 10013
   Telephone:    (212) 355-9500
4  Facsimile:    (212) 355-9592

5  LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
   Daniel M. Hutchinson (State Bar No. 239458)
6  dhutchinson@lchb.com
   Jacob H. Polin (State Bar No. 311203)
7  jpolin@lchb.com
   275 Battery Street, 29th Floor
8  San Francisco, CA  94111-3339
   Telephone: (415) 956-1000
9  Facsimile: (415) 956-1008

10 KOZONIS & KLINGER, LTD.
   Gary M. Klinger (*pro hac vice* to be filed)
11 gklinger@kozonislaw.com
   227 W. Monroe Street, Suite 2100
12 Chicago, Illinois 60606
   Phone: 312.283.3814
13 Fax: 773.496.8617

14 *Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| Brenda Robinson, *on behalf of herself and others similarly situated,* | Case No.  3:20-cv-1033 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227)** |
| v. | **CLASS ACTION** |
| Insurance Care Direct, Inc., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**Nature of this Action**

1. Plaintiff Brenda Robinson ("Plaintiff") brings this class action against Insurance Care Direct, Inc. ("Defendant" or "ICD"), under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Plaintiff alleges that ICD violated the TCPA by making telephone calls to Plaintiff and others similarly situated on their cellular telephones with the use of an artificial or prerecorded voice" ("Prerecorded Voice") as described in 47 U.S.C. § 227(b)(1)(A), and an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without their prior express written consent. Plaintiff and class members never consented to receive these calls.

3. ICD nonetheless engaged in a nationwide telemarketing campaign designed to sell insurance to consumers. Because this telemarketing campaign placed calls to many thousands of potential customers en masse, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received ICD's illegal telemarketing calls.

4. Plaintiff seeks injunctive relief, statutory damages and other legal and equitable remedies, resulting from ICD's conduct in violation of the TCPA.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

6. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

7. Venue is also proper in this District because Plaintiff has resided in this District at all relevant times and as a substantial portion of the events giving rise to this action occurred in this District.

**Parties**

8.  Plaintiff is a natural person who at all relevant times resided in Oakland, California.

9.  Defendant ICD is a corporation with its principal place of business in Deerfield Beach, Florida. At all times relevant herein, ICD conducted business in the State of California and within this judicial district.

**The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227**

10.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

12.  According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.  The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The Growing Telemarketing Epidemic**

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC."[1]

16. "The FTC receives more complaints about unwanted calls than all other complaints combined."[2]

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016.[3]

18. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing.[4]

---

[1] Tom Wheeler, Cutting Off Robocalls (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

[2] Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

[3] Federal Trade Commission, FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

[4] Tara Siegel Bernard, Yes, It's Bad. Robocalls, and Their Scams, Are Surging, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; see also Katherine Bindley, Why Are There So Many Robocalls? Here's What You Can Do About Them, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

19. Accordingly, Ajit Pai, Chairman of the FCC, dubbed illegal robocalls the FCC's "top consumer protection priority."[5] Indeed, as the FFC has observed:

> *Unwanted calls are far and away the biggest consumer complaint to the FCC* with over 200,000 complaints each year—around 60 percent of all the complaints we receive. Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016.

*Id.* (emphasis added).

## Automated Calling Technology

20. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

21. This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity-(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator-and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289, (2019) (emphasis supplied).[6]

22. The Ninth Circuit has also held that, based on the TCPA's statutory language, a predictive dialing system constitutes an ATDS under the TCPA. *See Marks*, 904 F.3d at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers-a common technology at that time-*language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by*

---

[5] https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing (last accessed June 10, 2019).

[6] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

1  *the TCPA.*") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637,
2  638-39 (7th Cir. 2012).[7]

### Factual Allegations

23. Plaintiff Robinson is a "person" as defined by 47 U.S.C. § 153(39).

24. Plaintiff's telephone number, (510) XXX-XXXX, is assigned to a cellular telephone service.

25. Beginning in or around May 2018, Plaintiff began receiving telemarketing calls from ICD.

26. ICD called Plaintiff repeatedly, at different times and using different numbers to mask the identity of the caller.

27. ICD's calls to Plaintiff contained a Prerecorded Voice. *See, e.g., Rahn v. Bank of Am., N.A.*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016) ("When one receives a call, it is a clearcut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

28. ICD's calls contained the same message, spoken by the same voice.

29. Many of the calls stated "please hold" followed by a pause before ICD began its telemarketing insurance solicitation.

30. Plaintiff did not give ICD prior express written consent to place calls to her cellular telephone number by using a Prerecorded Voice or an ATDS.

31. Plaintiff is not, nor was, one of ICD's customers.

32. Plaintiff does not, nor did, have any business relationship with ICD.

---

[7] Previously, the FCC has explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id*. at 14091, "constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

33.    Plaintiff did not provide her cellular telephone number to ICD.

34.    Upon information and good faith belief, and in light of the nature and character of the calls at issue, including ICD's use of Prerecorded Voice, the frequency of the calls, the uniform nature of each call, and the signature pauses in the calls, ICD placed its calls to Plaintiff's cellular telephone number by using an ATDS. ICD's calls to Plaintiff's cellular telephone number used "equipment which has the capacity-(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator-and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *See Marks*, 904 F.3d at 1053.

35.    ICD's use of an ATDS is further confirmed by its website, which promotes its Silverback calling software as using artificial intelligence tools to help call centers execute their calling plans more efficiently with fewer staff.

36.    Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number for non-emergency purposes.

37.    Rather, Defendant's calls to Plaintiff's cellular telephone number were in an apparent effort to sell insurance.

38.    Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number voluntarily.

39.    Upon information and good faith belief, Defendant placed its calls to Plaintiff's cellular telephone number under its own free will.

40.    Upon information and good faith belief, Defendant had knowledge that it was using a Prerecorded Voice and an ATDS to place its calls to Plaintiff's cellular telephone number.

41.    Plaintiff suffered actual harm as a result Defendant's calls because the calls were harassing, annoying, an invasion of privacy, an intrusion into her life, and a private nuisance.

42.    Upon information and good faith belief, Defendant, as a matter of pattern and practice, has used a Prerecorded Voice and an ATDS to place calls, absent prior express written consent, to Plaintiff's and class members' telephone numbers assigned to a cellular telephone service without their prior express written consent.

43. ICD has directly benefitted from such calls because, among other reasons, ICD sells more insurance despite the fact that its telemarketing call campaigns violate the TCPA.

**Class Action Allegations**

44. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons in the United States who, on or after four years prior to the filing of this action, received a call from Defendant ICD to a cellular telephone advertising its goods or services using an artificial or prerecorded voice and/or and automated telephone dialing system for whom ICD does not have a written or electronic record giving prior express consent to receive such calls.

45. Plaintiff represents, and is a member of, the Class.

46. Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

47. The identity of the Class members can be readily ascertained from the records of ICD.

48. The members of the class are ascertainable because the class is defined by reference to objective criteria. The identity of the class members can be readily ascertained from the records of ICD.

49. In addition, the members of the class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant and/or by third parties.

50. Plaintiff suffered the same injuries as the members of the class. This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of such phone calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such phone calls. Furthermore, the phone calls interfered with Plaintiff's and other class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes in that many of them were charged additional money for

1  the cell phone minutes taken up by Defendant's illegal calls, and all have had their privacy
2  invaded and been inconvenienced by such calls.

3      51.    Upon information and belief, the members of the class are so numerous that
4  joinder of all of them is impracticable.

5      52.    The exact number of the members of the class is unknown to Plaintiff at this time,
6  but, Plaintiff reasonably believes this number to be in the hundreds of thousands.

7      53.    Plaintiff's claims are typical of the claims of the members of the class.

8      54.    As it did for all members of the class, Defendant used a Prerecorded Voice and/or
9  an ATDS to place calls to Plaintiff's cellular telephone number.

10      55.    Plaintiff is not, and never was, a customer of Defendant.

11      56.    Plaintiff's claims, and the claims of the members of the class, originate from the
12  same conduct, practice, and procedure on the part of Defendant.

13      57.    Plaintiff's claims are based on the same theories as are the claims of the members
14  of the class.

15      58.    Plaintiff will fairly and adequately protect the interests of the members of the
16  class.

17      59.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the
18  interests of the members of the class.

19      60.    Plaintiff will vigorously pursue the claims of the members of the class.

20      61.    Plaintiff has retained counsel experienced and competent in class action litigation.

21      62.    Plaintiff's counsel will vigorously pursue this matter.

22      63.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the
23  class.

24      64.    The questions of law and fact common to the members of the class predominate
25  over questions that may affect individual members of the class.

26      65.    Issues of law and fact common to all members of the class are:

27      a.    Whether the non-emergency calls made to Plaintiff's and class members',
28  cellular telephones used an ATDS and/or a Prerecorded Voice;

      b.     Whether such calls were made by or on behalf of Defendant;

      c.     Whether the Defendant can meet its burden of showing it obtained prior written express consent (i.e., written consent that is clearly and unmistakably stated);

      d.     Whether the Defendant's conduct was knowing and/or willful;

      e.     Whether the Defendant is liable for damages, and the amount of such damages; and

      f.     Whether the Defendant should be enjoined from engaging in such conduct in the future.

66. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

67. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

68. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

69. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

70. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

71. The damages suffered by each individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

72. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

73. There will be little difficulty in the management of this action as a class action.

74. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

### Count I – Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

75. Plaintiff repeats and re-alleges each and every factual allegation contained in the foregoing paragraphs as if fully stated herein.

76. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing a Prerecorded Voice and an ATDS to place calls to Plaintiff's and class members' cellular telephone numbers without their prior express written consent.

77. As a result of Defendant's violations of 47 U.S.C. § 227 et seq. and 47 C.F.R. §64.1200 Plaintiff and class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and members of the class are entitled to treble damages of up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

79. Plaintiff and class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

80. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

1  e) Enjoining Defendant from continuing its violative behavior, including continuing to place calls to Plaintiff's cellular telephone number, and to the cellular telephone numbers of members of the class, by using Prerecorded Voice and an ATDS;

f) Awarding Plaintiff and the class damages under 47 U.S.C. § 227(b)(3)(B) for each and every violation of the TCPA;

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3) for each and every willful and/or knowing violation of the TCPA;

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: February 10, 2020

*/s/ Daniel M. Hutchinson*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
(State Bar No. 239458)
dhutchinson@lchb.com
Jacob H. Polin (State Bar No. 311203)
jpolin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000

Gary M. Klinger (*pro hac vice* to be filed)
Kozonis & Klinger, Ltd.
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: 312.283.3814
Fax: 773.496.8617
gklinger@kozonislaw.com

*Counsel for Plaintiff and the proposed class*